IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAROLD E. RUTILA, IV,

*Plaintiff,*

vs.

RANGE VIEW MANAGEMENT LLC
d/b/a Lendvia;
LENDVIA LLC;
BETTER DEBT SOLUTIONS LLC;
MN MGMT LLC;
RC MGMT LLC;
Mohammad Ghafarinia; and
Arsalan Ghanbari

*Defendants*.

Case: 2:25-cv-10839
Judge: Berg, Terrence G.
MJ: Altman, Kimberly G.
Filed: 03-25-2025 At 08:10 AM
CMP Rutila IV v. Range View
Management, LLC (tt)

**COMPLAINT**

## INTRODUCTION

1.  Plaintiff Harold E. Rutila, IV ("Plaintiff") brings this action for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Defendants RANGE VIEW MANAGEMENT LLC d/b/a Lendvia; LENDVIA LLC; BETTER DEBT SOLUTIONS LLC; MN MGMT LLC; RC MGMT LLC; Mohammad Ghafarinia; and Arsalan Ghanbari ("Defendants"), in negligently, willfully, and continually contacting Plaintiff on Plaintiff's telephone in violation of the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and its implementing regulations; the Michigan Home Solicitation Sales Act, MCL § 445.111, *et seq.*; the Michigan Consumer Protection Act, MCL § 445.900, *et seq.*; and the Michigan Telephone Companies As Common Carriers Act, MCL § 484.125, *et seq.,* (collectively, the "Michigan Telemarketing Statutes"), thereby harassing Plaintiff and invading his privacy.

2.    This case involves an aggressive telemarketing campaign by Defendants to sell loans and debt consolidation products to Plaintiff without having the required consent to contact him.

3.    Defendants have been warned by Plaintiff – and approximately a dozen other plaintiffs nationwide – of their illegal, invasive, and harassing conduct.

4.    Even after privately acknowledging Plaintiff's concerns, Defendants *to this day* continue to contact Plaintiff in violation of federal and state laws and regulations, leaving Plaintiff no choice but to file this suit for, *inter alia*, damages and injunctive relief.

5.    Unless otherwise stated, Plaintiff alleges that Defendants' violations were knowing and willful, that Defendants did not adequately train its employees, agents, and other personnel on the requirements of the TCPA and Michigan Telemarking Statutes, and that Defendants did not maintain procedures reasonably adapted to avoid any such violations.

6.    Unless otherwise indicated, the use of any named Defendant in this Complaint includes all agents, employees, vendors, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that named Defendant.

7.    Plaintiff alleges as follows based on personal knowledge and information and belief.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over these TCPA claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this case arises out of violations of federal law, 47 U.S.C. § 227.

9.    This Court has limited personal jurisdiction over corporate Defendants because such Defendants transacted business within the State of Michigan and/or did acts or caused acts

to be done or consequences to occur in the State of Michigan resulting in an action for tort. MCL § 600.715.

10. This Court has limited personal jurisdiction over individual Defendants because such Defendants transacted business within the State of Michigan and/or did acts or caused acts to be done or consequences to occur in the State of Michigan resulting in an action for tort. MCL § 600.705.

11. Venue is proper in the Eastern District of Michigan under 28 U.S.C. § 1391(b)(2) because the events and/or omissions giving rise to these claims occurred within this judicial district.

## <u>PARTIES</u>

12. Plaintiff Harold E. Rutila, IV is a natural person and citizen who resides full-time in Wayne County, MI.

13. Defendant RANGE VIEW MANAGEMENT LLC d/b/a Lendvia is a California corporation with a principal office address of 2525 Main St, 500, Irvine, CA 92614 [1] [2].

14. Defendant LENDVIA LLC is a California corporation with a principal office address of 2525 Main St, Ste 420, Irvine, CA 92614.

15. Defendant BETTER DEBT SOLUTIONS LLC is a California corporation with the principal office address of 2525 Main St, 500, Irvine, CA 92614[3].

---

[1] It is believed "Ste 500" is the appropriate second address line for this entity, but the abbreviation "Ste" has been omitted from the business records for RANGE VIEW MANAGEMENT LLC on file with the State of California.
[2] The principal office address according to Defendant RANGE VIEW MANAGEMENT LLC's website, https://rangeviewmgm.com, is 15303 Ventura Blvd, Sherman Oaks, CA 91403.
[3] Once more, it is believed that the correct second line of this address should be "Ste 500."

16. Defendant MN MGMT LLC is a California corporation with the principal office address of 2525 Main St, Ste 500, Irvine, CA 92614 and is a manager, member, or both, of Defendant LENDVIA LLC and Defendant BETTER DEBT SOLUTIONS LLC.

17. Defendant RC MGMT LLC is a California corporation with the principal office address of 2525 Main St, Ste 500, Irvine, CA 92614 and is a manager, member, or both, of Defendant LENDVIA LLC and Defendant BETTER DEBT SOLUTIONS LLC.

18. Defendant Mohammad "Matt" Ghafarinia is a person residing in Newport Beach, CA who is a manager, member, or both, of Defendant MN MGMT LLC.

19. Defendant Arsalan Ghanbari is a person residing in Newport Beach, CA who is a manager, member, or both, of Defendant RC MGMT LLC.

20. Defendants are each a person defined by 47 U.S.C. § 153(39).

21. Upon information and belief, Defendants Ghafarinia and Ghanbari (a) had direct, personal participation in causing the illegal telemarketing calls, voicemails, and text messages alleged in this complaint to be made;

(b) directly authorized these illegal telemarking calls, voicemails, and text messages to be made;

(c) failed to implement appropriate policies and/or procedures designed to comply with federal statutes, federal regulations, and state laws that are the bases for this cause of action;

(d) authorized and ratified the illegal calls, voicemails, and text messages;

(e) refused to alter their companies' business practices despite that the corporate Defendants named herein, have been sued for the same or similar TCPA violations in at least 12 separate actions in multiple federal district courts since January 2024; and

(f) by repeatedly contacting Plaintiff in violation of the TCPA and Michigan Telemarketing Statutes, took actions that were and are sufficient such that these individual Defendants could reasonably anticipate being brought to court here.

## STATUTORY BACKGROUND

### TELEPHONE CONSUMER PROTECTION ACT (TCPA)

22. In 1991, Congress passed the TCPA in response to complaints about certain telemarketing practices. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11.

23. Congress acknowledged that interstate telemarketing is a problem of such magnitude far exceeding the capability of the Government to enforce alone when it created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize aggrieved private citizens to prosecute TCPA violations in private rights of action in the federal courts. *See* 47 U.S.C. § 227(b)(3).

24. The TCPA imposes restrictions on the use of automated telephone equipment. 47 U.S.C. § 227(b)(1).

25. The TCPA bars any call, including a text message:

[T]hat includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

47 C.F.R. § 64.1200(a)(2); *see also Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015) (noting that the Federal Communications Commission has determined that the TCPA encompasses text messages to wireless numbers)

26.   Congress created a private right of action for aggrieved persons to receive $500 in damages for *each* violation of the TCPA subsection, or the associated regulations, concerning the use of automated telephone equipment. The damage amount may be trebled by up to three times the damage amount if a court finds that a defendant willfully or knowingly violated the statute and/or the regulations. 47 U.S.C. 227(b)(3).

27.   Congress also sought to protect telephone subscriber privacy rights and directed the FCC to develop regulations which meet that end, now contained at 47 C.F.R. §§ 64.1200(c), *et seq.*, 64.1200(d), *et seq.*, and 64.1601(e).

28.   Congress created another private right of action for aggrieved persons to receive $500 in damages for *each* violation of the TCPA subsection, or the associated regulations, concerning subscriber privacy rights. The damage amount may be trebled by up to three times the damage amount if a court finds that a defendant willfully or knowingly violated the statute and/or the regulations. 47 U.S.C. § 227(c)(5).

29.   In cases that the federal government is able to enforce, the fines levied in response to TCPA violations are in the millions to hundreds-of-millions of dollar range, the highest of which was levied on August 3, 2023 in the amount of $300 million against a transnational auto warranty telemarketing sales operation. https://docs.fcc.gov/public/attachments/DOC-395728A1.pdf

30.   Other FCC-levied fines include $341 million against Dish Network in 2017, $75.5 million against Capital One in 2014, $1.85 million against Highmark Health Options in 2023, and

$10 million against Domino's Pizza in 2013. https://simpletexting.com/sms-compliance/violations-fines-penalties/

31. The FCC has declared that the telephone subscribers who have listed their wireless telephone number on the national Do-Not-Call List are deemed "residential subscribers." *In the Matter of Rules and Regulations Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039, 2003 WL 21517853, at *14 ¶ 36 (2003).

32. The TCPA makes it unlawful to make calls to any cellular or residential telephone line using an artificial or prerecorded voice, without the call recipient's prior express consent. *See* 47 U.S.C. § 227(b); *In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012).

33. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. It ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" *Id.*

34. The TCPA's definition of telephone solicitation applies to the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

35. The TCPA's definition of unsolicited advertisement applies to "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

36. The TCPA requires entities and persons engaging in telemarketing meet minimum standards, including training their personnel concerning the rules regarding telemarketing. 47 C.F.R. §§ 64.1200(d)(1)-(d)(3); 47 C.F.R. § 61.1200(b).

37. When considering individual officer liability under the TCPA, various Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See*, *e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

38. Under the TCPA, individual party Defendants are personally liable for the acts and omissions alleged in this Complaint.

39. The individual Defendants directed and oversaw the telemarketing activity in progress, including selecting one or more third-party affiliates to make the calls, exercising control over those affiliates, and exercising control over any other employees who make the telephone calls.

## MICHIGAN HOME SOLICITATION SALES ACT

40. The Michigan Legislature has enacted restrictions on telephone solicitations in the Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111, *et seq.*

41. The MHSSA defines a "telephone solicitation" as "any voice communication over a telephone for the purpose of encouraging the recipient of the call to purchase, rent, or invest in goods or services during that telephone call." MCL § 445.111(m).

42. The MHSSA defines a "telephone solicitor" as "any person doing business in this state who makes or causes to be made a telephone solicitation from within or outside of his state, including, but not limited to, calls made by use of automated dialing and announcing devices or by a live person." MCL § 445.111(n).

43. The MHSSA prohibits telephone solicitors from (a) making solicitations in whole or in part using a recorded message; (b) calling residential telephone subscribers who are on the federal Do-Not-Call list; (c) calling consumers who have requested not to receive calls from an organization; (d) misrepresenting in voicemails left for a consumer the existence of a business relationship and requesting him to call the organization back in reference thereto (e) failing to identify the full name of the organization on whose behalf the call was initiated at the beginning of a call; and (f) blocking or interfering with the caller ID function.

44. The MHSSA provides that a person who suffers a loss as a result of the MHSSA may bring an action to recover actual damages or $250, together with reasonable attorney fees. MCL § 445.111c(3).

**MICHIGAN CONSUMER PROTECTION ACT**

45. Under the Michigan Consumer Protection Act (MCPA), the Michigan Legislature defines a series of violations which it deems "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade of commerce." MCL § 445.903.

46. Violating the telephone solicitation provisions of the MHSSA, MCL § 445.111, *et seq.*, also constitutes a violation of the MCPA. MCL § 445.903(gg).

47. The MCPA provides that a person who suffers a loss as a result of a violation of the MCPA may bring an action to recover actual damages or $250, together with reasonable attorney fees. MCL § 445.911.

**MICHIGAN TELEPHONE COMPANIES AS COMMON CARRIERS ACT**

48. The Michigan Telephone Companies as Common Carriers Act (MTCCCA) prohibits callers from (a) delivering recorded messages for the purpose of advertising without consent; (b) delivering or attempting to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller ID information that would otherwise be available; and (c) using automated dialing, push button, or tone activated devices which operate sequentially or are otherwise unable to avoid contacting subscribers who have not authorized the contact. *See* MCL § 484.125.

49. The MTCCCA provides that a subscriber contacted by a caller in violation of the MTCCCA may bring an action to recover damages of $1,000, together with reasonably attorney fees. MCL § 484.125(5).

**<u>FACTUAL ALLEGATIONS</u>**

50. At all times relevant herein, Plaintiff maintained and used a residential cellular telephone line, with phone number (810) 845-3497. This phone number is not associated with a business and is used solely by Plaintiff.

51. Plaintiff is the account holder and customary user of his phone number.

52. Plaintiff registered his phone number on the Federal Do Not Call Registry on August 18, 2009. Exhibit 1.

53. Plaintiff registered his phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls, which prevent Plaintiff from using his phone for legitimate purposes.

54. According to its website, Lendvia is a d/b/a of Defendant RANGE VIEW MANAGEMENT LLC and provides personal loan products and debt consolidation services.

55. Prior to the onset of events alleged in this action, Plaintiff had no knowledge of the existence of any of the Defendants, did not have any prior business relationship with Defendants, and had not provided any Defendants with consent to contact him.

56. Beginning in January 2024, the Better Business Bureau began logging and publishing numerous consumer complaints against Lendvia, most of which refer to Lendvia's practice of incessantly robocalling consumers multiple times per day, even after some consumers reported personally asking Lendvia's agents to stop calling them. Exhibit 2.

57. From January 2024 to present, Defendants have collectively been named in approximately 12 federal lawsuits involving TCPA claims, excluding this action.

58. Defendants utilize telemarketing as a cost-effective method to solicit customers for loans and debt consolidation products at large.

59. As part of its telemarketing practices, Defendants utilize automated telephone dialing systems to contact consumers *en masse* by dialing their telephone numbers and determining which ones are "qualified" for Defendants' financial products.

60. In cases where consumers do not pick up Defendants' phone calls, Defendants' automated telephone dialing systems were frequently programmed to transmit automated or prerecorded voicemail messages that typically exceeded 1 minute in length in the consumer's voice mail inbox.

61. The extended silences of between 5 and 10 seconds at the start of almost every voicemail Plaintiff received from Defendants are indicative of Defendants' use of automated telephone dialing equipment.

62. The identical voicing and script used in multiple sets of voicemails from Defendants as received by Plaintiff are indicative of the voicemail's prerecorded nature.

63. In not a single instance of a prerecorded voicemail from Defendants as received by Plaintiff did Defendants identify their organization's name.

64. Beginning in November 2024, Plaintiff began documenting his receipt of daily calls for the purpose of solicitation that had been made to him by Defendants, which quickly thereafter became twice- to five-times-daily occurrences.

65. The first known calls for the purpose of solicitation were placed on the following dates from the following phone numbers, which upon information and belief Defendants used to contact him:

    a. November 7, 2024    3:43 P.M.    (810) 500-2589
    b. November 12, 2024   5:19 P.M.    (605) 812-5472
    c. November 13, 2024   10:18 A.M.   (307) 393-0531
    d. November 13, 2024   12:21 P.M.   (810) 500-2285
    e. November 13, 2024   5:13 P.M.    (810) 500-2673
    f. November 14, 2024   1:52 P.M.    (618) 916-1480
    h. November 14, 2024   2:39 P.M.    (810) 500-2504
    g. November 14, 2024   6:41 P.M.    (810) 500-2103
    i. November 14, 2024   8:11 P.M.    (929) 748-1615

66. In conjunction with Defendants' call described in Allegation 65 paragraph (i) above, Defendants also left Plaintiff a lengthy, prerecorded voicemail on Plaintiff's phone. Following over 10 seconds of silence, a female voice stated as follows:

    Hi, this is Jessica from the loan approval team. I'm calling regarding your loan inquiry. We're almost finished processing your loan, but we need to verify a few details, specifically about your income. Please return my call at (877) 867-5139 ideally before 5 P.M. Pacific Time today. When you call, mention your application ID – A as in apple, H

as in hotel, Z as in zebra, 3-4-5-7-8. Again, that is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. My number is (877) 867-5139, and your application ID, once again, is AH734578. I'm looking forward to getting this wrapped up for you. Talk soon. Thank you.

67.   Neither this voicemail, nor any of the estimated 17 others that were subsequently left by Defendants in Plaintiff's voicemail inbox stated the sender's company name.

68.   From November 15, 2024 through November 19, 2024, Plaintiff received another five phone calls for the purpose of solicitation from numbers that, upon information and belief, Defendants used to contact him, as follows:

    a.    November 15, 2024   1:40 P.M.   (810) 500-2285
    b.    November 15, 2024   4:21 P.M.   (810) 500-2103
    c.    November 16, 2024   12:34 P.M.   (810) 500-2118
    d.    November 19, 2024   12:23 P.M.   (440) 218-8543
    e.    November 19, 2024   5:10 P.M.   (810) 500-2114

69.   In conjunction with Defendants' call described in Allegation 68, paragraph (e) above, Defendants left a prerecorded voicemail that was identical in voice and content to the one Plaintiff had already received following Defendants' call described in Allegation 65 paragraph (i) above.

70.   The identical nature of each voicemail received in conjunction with the two calls described in Allegation 65, paragraph (i), and Allegation 68, paragraph (e), demonstrate that the voicemail was indeed prerecorded.

71.   Plaintiff then received three additional phone calls for the purpose of solicitation from numbers that, upon information and belief, Defendants used to contact him, as follows:

    a.    November 20, 2024   3:33 P.M   (810) 500-2636
    b.    November 25, 2024   1:23 P.M.   (313) 514-0336
    c.    November 27, 2024   3:44 P.M.   (313) 514-0326

72. On December 2, 2024 at 1:36 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 500-2429, which, upon information and belief, Defendants used to contact him.

73. On December 2, 2024 at 5:01 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-6831, which, upon information and belief, Defendants used to contact him. The female voice therein was identical to the previous two voicemails alleged in Allegations 66 and 69 above, but with a slightly modified script. Due to an apparent error in the system transmitting the voicemail, the beginning of the message was truncated. The female voice read as follows:

> …we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

74. On December 5, 2024 at 12:47 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 500-2557, which, upon information and belief, Defendants used to contact him.

75. On December 5, 2024 at 4:50 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 500-2426, which, upon information and belief, Defendants used to contact him.

76. On December 5, 2024 at 5:41 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-6831, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to the one

alleged in Allegation 73, except that the beginning of this message was not truncated. Following 10 seconds of silence, the female voice stated as follows:

> Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

77.  On December 6, 2024 at 11:53 A.M., Plaintiff received a phone call for the purpose of solicitation from (802) 374-1046, which, upon information and belief, Defendants used to contact him.

78.  On December 6, 2024 at 1:50 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 500-2119, which, upon information and belief, Defendants used to contact him.

79.  On December 9, 2024 at 11:46 A.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (502) 787-3093, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to that in Allegations 66 and 69 above. Following 10 seconds of silence, a female voice stated as follows:

> Hi, this is Jessica from the loan approval team. I'm calling regarding your loan inquiry. We're almost finished processing your loan, but we need to verify a few details, specifically about your income. Please return my call at (877) 867-5139 ideally before 5 P.M. Pacific Time today. When you call, mention your application ID: A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Again, that is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. My number is (877) 867-5139, and your application ID, once again, is A-H-7-3-4-5-7-8. I'm looking forward to getting this wrapped up for you. Talk soon. Thank you.

80.  Between December 9, 2024 at 4:08 P.M. and December 17, 2024 at 12:36 P.M., Plaintiff received the following seven phone calls for the purpose of solicitation from numbers which, upon information and belief, Defendants used to contact him:

    a.  December 9, 2024    4:08 P.M.    (210) 594-8767
    b.  December 11, 2024   11:22 A.M.   (802) 374-1262
    c.  December 11, 2024   7:57 P.M.    (810) 500-2615
    d.  December 12, 2024   6:09 P.M.    (313) 463-6220
    e.  December 16, 2024   11:35 A.M.   (469) 575-2646
    f.  December 16, 2024   12:56 P.M.   (800) 272-7281
    g.  December 17, 2024   12:36 P.M.   (313) 514-1106

81.  On December 17, 2024 at 6:00 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (645) 209-6928, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content as the ones alleged in Allegations 66, 69, and 79 above. The beginning of this voicemail was truncated, indicating the automated system transmitting the voicemail began the transmission too soon. A female voice stated as follows:

> …loan, but we need to verify a few details, specifically about your income. Please return my call at (877) 867-5139 ideally before 5 P.M. Pacific Time today. When you call, mention your application ID: A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Again, that is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. My number is (877) 867-5139, and your application ID, once again, is A-H-7-3-4-5-7-8. I'm looking forward to getting this wrapped up for you. Talk soon. Thank you.

82.  On December 20, 2024 at 4:45 P.M., Plaintiff received a phone call for the purpose of solicitation from (313) 514-1185, which, upon information and belief, Defendants used to contact him.

83.  On December 20, 2024 at 7:13 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-6831, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to

the one alleged in Allegations 73 and 76. After 5 seconds of silence, the female voice stated

as follows:

Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

84.  On December 21, 2024 at 1:37 P.M., Plaintiff received a phone call and prerecorded

voicemail for the purpose of solicitation from (645) 209-6928, which, upon information and

belief, Defendants used to contact him. This voicemail was identical in voice and content to

the one alleged in Allegations 73, 76, and 83. Following 5 seconds of silence, the female

voice stated,

Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

85.  On December 20, 2024 at 4:45 P.M., Plaintiff received a phone call for the purpose of

solicitation from (313) 514-1291, which, upon information and belief, Defendants used to

contact him.

86.   On December 26, 2024 at 1:25 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-6381, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to the one alleged in Allegations 73, 76, 83, and 84, except that the beginning of this voicemail was truncated due to an apparent malfunction with the automated system that transmitted it. The female voice stated,

…we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

87.   On December 30, 2024 at 4:32 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-7199, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to the one alleged in Allegations 73, 76, 83, 84, and 86. After 5 seconds of silence, the voice stated,

Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

88.  Having become irritated at the volume of calls and identical prerecorded voicemails from Defendants, on December 30, 2024 at 4:35 P.M., Plaintiff made a call back to (364) 224-7199, the number that had called him as part of the call and prerecorded voicemail described in Allegation 87.

89.  After a short ring and several seconds of silence, a female answered, identifying herself as "Leslie with Best Loan Solutions." She stated, "The purpose of my call for you today, sir, was just in reference to a personal loan offer that we have available for you." She further stated that amounts of money "anything from $5,000 all the way up to $100,000" were available at "interest rates as low as 5.99%." When "Leslie" asked Plaintiff if he wanted more information, Plaintiff asked her to send him information via email.

90.  On December 31, 2024 at 2:41 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (645) 209-7348, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to the one alleged in Allegations 73, 76, 83, 84, 86, and 87. The female voice stated as follows:

We just need to verify a few final details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

91.  From January 2, 2025 at 1:01 P.M. through January 7, 2025 at 3:17 P.M., Plaintiff received the following 6 phone calls for the purpose of solicitation from numbers which, upon information and belief, Defendants used to contact him:

   a.    January 2, 2025     1:01 P.M.    (810) 937-2345
   b.    January 3, 2025    12:59 P.M.   (313) 514-1296

    c.    January 6, 2025    11:32 A.M.  (810) 214-1751
    d.    January 6, 2025    11:32 A.M.  (810) 214-1751
    e.    January 6, 2025    5:00 P.M.  (313) 514-1302
    f.    January 7, 2025    3:17 P.M.  (313) 455-5031

92.    On January 9, 2025 at 2:49 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (364) 224-7199, which, upon information and belief, Defendants used to contact him. The voice was identical to those in all prior alleged voicemails, with a slight difference in script. After 5 seconds of silence, the female voice stated as follows[4]:

Hey…this is Jessica....from your loan...I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet…details mostly related to your income and a few other minor items, just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However…

93.    On January 9, 2025 at 3:40 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 214-1814, which, upon information and belief, Defendants used to contact him.

94.    On January 14, 2025 at 5:42 P.M., Plaintiff received a phone call for the purpose of solicitation from (810) 653-3230, which, upon information and belief, Defendants used to contact him.

95.    On January 15, 2025 at 6:43 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (645) 203-7077, which, upon information and belief, Defendants used to contact him. This voicemail was identical in voice and content to the one alleged in Allegation 92. Following 5 seconds of silence, the female voice stated:

Hey there, this is Jessica again from your loan processing team. I've been trying to reach out to you regarding your loan application, but we haven't been able to connect yet. We just need to verify a few final details mostly related to your income and a few other minor items,

---

[4] The automated system that transmitted this voicemail apparently malfunctioned, causing the message to be truncated.

just to complete your approval. Could you please return my call at (877) 867-5139? It would be ideal if we could finalize this before 5 P.M. Pacific Time today. However, if you changed your mind, would like to cancel your application, or no longer wish to proceed, please feel free to let us know as well. When you give us a call back, make sure to mention your application ID just for a faster process. Your application ID is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. Once again, that number is A as in apple, H as in hotel, Z as in zebra, 3-4-5-7-8. And also, just a reminder, my number is (877) 867-5139. I'm looking forward to hearing from you soon. Thank you so much and have a wonderful day.

96.  From January 16, 2025 at 3:11 P.M. until January 17, 2025 at 4:07 P.M., Plaintiff received the following four phone calls for the purpose of solicitation from numbers which, upon information and belief, Defendants used to contact him:

|    |                  |            |                |
|----|------------------|------------|----------------|
| a. | January 16, 2025 | 3:11 P.M.  | (810) 658-4170 |
| b. | January 17, 2025 | 10:59 A.M. | (313) 442-7083 |
| c. | January 17, 2025 | 2:06 P.M.  | (326) 699-6289 |
| d. | January 17, 2025 | 4:07 P.M.  | (810) 500-2542 |

97.  Having now received 55 unsolicited phone calls and 13 prerecorded messages from numbers such as this, which Plaintiff reasonably believed were coming from the same company or companies, Plaintiff answered his phone following the call described in Allegation 96 to identify the company or companies involved in the illegal telemarketing activity.

98.  Upon answering his phone, Plaintiff encountered a silent phone line for approximately 5 seconds, which is indicative of Defendant's use of an automated telephone dialing system, before being eventually greeted by a female who identified herself as "Gwen with Best Loan Solutions."

99.  After a brief interaction with "Gwen," who informed Plaintiff that he met the criteria for a "personal loan with rates as low as 5.99%," "Gwen" transferred Plaintiff to a "senior advisor" to initiate the lending process.

100. The "senior advisor" to whom Plaintiff was passed identified himself as "Mauricio Cazares with Lendvia."

101. While on the call with Plaintiff, Mr. Cazares sent Plaintiff an email with the subject line "VIRTUAL HANDSHAKE," which contained Mr. Cazares' business information, indicating that he worked for Lendvia.

102. Mr. Cazares walked Plaintiff through the "lending process" at Lendvia, which involved completing an application on an online third-party lending platform, Monevo.

103. On January 18, 2025 at 9:59 A.M., Plaintiff sent Defendants an email with the subject line "Do Not Call," requesting Defendants to, "Please discontinue calling and texting me, and please place me on your do not call list."

104. On January 28, 2025 at 3:13 P.M., Plaintiff received a phone call for the purpose of solicitation from (828) 554-4023, which, upon information and belief, Defendants used to contact him. Plaintiff answered his phone and was greeted by an automated or prerecorded voice. "It's important to speak with you directly to finalize your options and ensure you receive the best available terms. To connect with underwriting now, press 2."

105. After pressing 2, Plaintiff was transferred to a male identifying himself as Andre with Best Loan Solutions. Much like Plaintiff's interaction with "Gwen from Best Loan Solutions" described in Allegations 98 and 99, Plaintiff answered some preliminary questions from Andre and was then transferred to a "senior advisor."

106. The "senior advisor" to whom Plaintiff was transferred identified himself as "Danny Martinez, agent ID 1532 with BDS on a recorded line." After a short interaction with Plaintiff, Mr. Martinez stated "It looks like you actually spoke to somebody here before, and for whatever reason, **you are on the Do Not Call list**. Do you recall speaking to somebody at Better Debt Solutions?" Plaintiff answered, "Not Better Debt Solutions, but I talked to Lendvia last week… ." Mr. Martinez replied, "Lendvia. Ok yea, that is our sister company.

We're all under the same umbrella." Plaintiff stated, "Ok. Yea, if that's the case, I'll just go ahead and say I'm not interested at this time." The call was therefore ended.

107.  Plaintiff's interaction with Mr. Martinez confirmed that, as of January 28, 2025, Plaintiff was on Defendants' Do Not Call list.

108.  Despite being on Defendants' Do Not Call list, Defendants nevertheless continued to willfully, knowingly, and with wanton disregard, violate federal laws and regulations by continuing to call and leave prerecorded voicemails for the purpose of solicitation on Plaintiff's phone.

109.  For example, on January 31, 2025 at 12:30 P.M., Plaintiff received a phone call for the purpose of solicitation from (943) 277-5099, which, upon information and belief, Defendants used to contact him. Plaintiff answered and was greeted by an artificial or prerecorded voice, which stated "We're excited to assist you and look forward to your call."

110.  Within a few seconds, Plaintiff was then transferred to a live agent, who answered as "Bill from Best Loan Solutions." Bill proceeded to give Plaintiff a sales pitch in which he advertised loans with "interest rates as low as 5.99%." Shortly after this sales pitch began, the call disconnected.

111.  On February 1, 2025 at 11:19 A.M., Plaintiff received a call and prerecorded voicemail for the purpose of solicitation from (943) 277-4111, which, upon information and belief, Defendants used to contact him. Following 5 seconds of silence, a male voice stated

> Hi, this is a follow-up regarding your recent loan inquiry. We've reviewed your file, and based on your updated credit profile, it looks like you may now qualify for loan assistance with rates starting as low as 6.99%. We'd just like to confirm a few details to finalize your options and secure the best possible terms. Please give us a call back at (855) 356-2569 to speak with underwriting. Our team is available from 7 A.M. to 6 P.M. Pacific Standard Time, Monday through Friday, and on Saturday from 8 A.M. to 2 P.M. Once again, the number is (855) 356-2569. We look forward to helping you with your financial goals. Thank you.

112. On February 1, 2025 at 11:39 A.M., Plaintiff called back (943) 277-4111 for the purpose of confirming the identity of the caller. An agent from Best Loan Solutions answered the call.

113. On February 3, 2025 at 3:29 P.M., Plaintiff received a phone call for the purpose of solicitation from (313) 442-7365, which, upon information and belief, Defendants used to contact him.

114. On February 3, 2025 at 7:49 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (943) 277-0990. This voicemail was identical in voice and content as that described in Allegation 111. After 5 seconds of silence, the male voice stated

> Hi, this is a follow-up regarding your recent loan inquiry. We've reviewed your file, and based on your updated credit profile, it looks like you may now qualify for loan assistance with rates starting as low as 6.99%. We'd just like to confirm a few details to finalize your options and secure the best possible terms. Please give us a call back at (855) 356-2569 to speak with underwriting. Our team is available from 7 A.M. to 6 P.M. Pacific Standard Time, Monday through Friday, and on Saturday from 8 A.M. to 2 P.M. Once again, the number is (855) 356-2569. We look forward to helping you with your financial goals. Thank you.

115. On February 4, 2025 at 7:08 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (502) 761-6356. After 5 seconds of silence, a female voice stated

> Hi. This is a follow-up regarding your recent interest in a loan or financial assistance. We are reaching out because based on your updated credit profile, you may now qualify for new loan options. These options are specifically designed to help individuals and families consolidate high-interest personal loans or credit card debt into one lower, more manageable payment with rates starting at 6.99%. To learn more and speak with an underwriting specialist, please call us back at (866) 705-6003. Our team is available Monday through Friday, 7 A.M. Pacific Standard Time to 6 P.M. Pacific Standard Time, and Saturdays, 8 A.M. Pacific Standard Time to 2 P.M. Pacific Standard Time. Again, that's (866) 705-6003. Don't miss this opportunity to take control of your finances. We look forward to assisting you.

116. Several minutes later, at 7:21 P.M., Plaintiff called back (502) 761-6356 for the purpose of confirming the identity of the caller. An agent from Best Loan Solutions answered. Plaintiff was transferred by that agent to another of Defendants' agents, who identified himself as "Eric, Agent ID 1582" and stated he was a senior advisor with Defendant BETTER DEBT SOLUTIONS LLC. Plaintiff then terminated the call.

117. On February 4, 2025 at 7:28 P.M., Plaintiff received a phone call for the purpose of solicitation from (949) 767-5226, which, upon information and belief, Defendants used to contact him.

118. On February 5, 2025 at 6:40 P.M., Plaintiff received a phone call and prerecorded voicemail for the purpose of solicitation from (866) 705-6003. This voicemail was identical in voice and content to the one described in Allegation 115. After 5 seconds of silence, the female voice stated:

> Hi. This is a follow-up regarding your recent interest in a loan or financial assistance. We are reaching out because based on your updated credit profile, you may now qualify for new loan options. These options are specifically designed to help individuals and families consolidate high-interest personal loans or credit card debt into one lower, more manageable payment with rates starting at 6.99%. To learn more and speak with an underwriting specialist, please call us back at (866) 705-6003. Our team is available Monday through Friday, 7 A.M. Pacific Standard Time to 6 P.M. Pacific Standard Time, and Saturdays, 8 A.M. Pacific Standard Time to 2 P.M. Pacific Standard Time. Again, that's (866) 705-6003. Don't miss this opportunity to take control of your finances. We look forward to assisting you.

119. On February 5, 2025 at 7:28 P.M., Plaintiff called back (866) 705-6003 for the purpose of confirming the identity of the caller. An agent from Best Loan Solutions answered. Plaintiff was transferred by that agent to another of Defendant's agents, who identified himself as "Jericho, Agent ID 1461" and stated he was with Defendant BETTER DEBT SOLUTIONS LLC.

120. On February 5, 2025 at 7:46 P.M., Plaintiff received a phone call for the purpose of solicitation from (949) 482-1334, which, upon information and belief, Defendants used to contact him.

121. On February 6, 2025, Plaintiff sent Defendants an email requesting, *inter alia*, a copy of their Do-Not-Call policy and reiterated his previous request of January 18, 2025 that Defendants stop calling him.

122. Plaintiff did not receive a response to this email until February 12, 2025.

123. Defendants' February 12, 2025 response to Plaintiff's email purports to include Defendants' TCPA compliance policy, which appears as a boilerplate document that directly quotes the TCPA and fails to address with specificity any processes or procedures through which Defendants' personnel could work to avoid violating the TCPA.

124. On March 5, 2025 at 6:24 P.M., Plaintiff received a phone call for the purpose of solicitation from (949) 606-0860. When Plaintiff answered his phone, an agent who introduced himself as "Sammy from Better Debt Solutions" informed he was calling to follow up on any of Plaintiff's lending needs, after which point Plaintiff disconnected the call.

125. On March 12, 2025 at 3:49 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (408) 409-8447, which read as follows:

Hi Harold, Mia here from Lendvia. I am following up on your personal loan request. I wanted to connect you with our loan officer regarding your approval & next steps. Reply END to opt out. Otherwise, do you have a few minutes now to talk?

If you no longer need the loan, just let me know.

126. On March 13, 2025 at 2:31 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (408) 409-8447, which read as follows:

Hi Harold, Lendvia following up regarding your personal loan options. Let me know if you no longer need the loan. Otherwise, do you have a few minutes to discuss your options?

127. On March 14, 2025 at 3:29 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (408) 409-8447, which read as follows:

Hi Harold, I don't want to bother you. This is Lendvia reaching out again to review options regarding your personal loan. I just need a few minutes. Do you have time now for a quick all? (sic) If you no longer need the loan let me know. I appreciate it.

128. On March 14, 2025 at 7:23 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (888) 291-6710, which read as follows:

Hi Harold, this is Emma from Lendvia. Following up again on your personal loan request to assist with your finances. We'd still like to review your approval & next steps with you. Reply END to opt out. Harold, if you no longer need a personal loan, just let me know. Otherwise, can I call you now to discuss further?

129. On March 17, 2025 at 2:33 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (888) 291-6710, which read as follows:

Hi Harold, Lendvia checking in again regarding your personal loan options. Let me know if you no longer need one, otherwise, do you have a few minutes to go over your options?

130. On March 17, 2025 at 4:20 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (408) 409-8447, which read as follows:

Harold this is Mia with Lendvia again. Let's review your options for your personal loan & take the next steps to get your money by tomorrow. Is now a better time for a quick call?

131. On March 18, 2025 at 3:32 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (888) 291-6710, which read as follows:

Hi Harold, I don't want to keep bothering you. This is Lendvia reaching out again to go over your personal loan details. If you no longer need it, just let me know. Otherwise, do you have a few minutes now to discuss?

132. On March 18, 2025 at 5:34 P.M., Defendants sent Plaintiff an SMS text message for the

purpose of solicitation from (408) 409-8447, which read as follows:

Harold, this is Lendvia. Have not heard back from your regarding your personal financing plan. Let me know if no longer interested, otherwise, can you talk now?

133. On March 19, 2025 at 4:17 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (888) 291-6710, which read as follows:

Harold, this is Emma with Lendvia checking back in. We can get your funds to you as soon as tomorrow, but we still need to review some details. Would now be a better time for a quick call?

134. On March 19, 2025 at 6:03 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (408) 409-8447, which read as follows:

Hi Harold, this is Lendvia reaching out one last time regarding your personal Loan. I understand life gets busy, just need a 5 min call to secure your loan. Do you have time now to talk?

135. On March 20, 2025 at 5:38 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (888) 291-6710, which read as follows:

Harold, this is Lendvia. We haven't heard back from you regarding your personal financing plan. If you're no longer interested, just let me know. Otherwise, do you have a few minutes now to talk?

136. On March 21, 2025 at 6:03 P.M., Defendants sent Plaintiff an SMS text message for the purpose of solicitation from (888) 291-6710, which read as follows:

Hi Harold, this is Lendvia reaching out one last time to finalize your personal loan. If I do not hear back from you, I will assume you are no longer interested. Otherwise, let's jump on a quick call to discuss the next steps. Can I call you now?

137. In sum, Defendants placed at least 65 telephone solicitation calls, 17 prerecorded voicemails, and 12 text messages to Plaintiff, numbers which Plaintiff will clarify during discovery and amend accordingly.

138. Defendants were required under TCPA regulations to provide training to any personnel engaged in any aspect of telemarketing on the existence and use of Do Not Call lists.

139. As demonstrated in the above allegations, Defendants have failed to properly train its personnel on the existence and use of Do Not Call lists.

140. Defendants are not an organization exempt from the TCPA.

141. Defendants are not an organization exempt from the Michigan Telemarketing Statutes.

142. Defendants' calls, voicemails, and text messages to Plaintiff were each a "telephone solicitation" as defined by the TCPA.

143. Defendants' calls, voicemails, and text messages to Plaintiff were each an "unsolicited advertisement" as defined by the TCPA.

144. Defendants' calls and voicemails to Plaintiff were each telephone solicitations as defined in Michigan Telemarketing Statutes.

145. Upon information and belief, Plaintiff received additional calls, voicemails, and text messages from Defendants that have not yet been identified.

146. As a result of the foregoing, Plaintiff has been unnecessarily inconvenienced, annoyed, irritated, and frustrated by Defendants' repetitive attempts to contact him.

147. Defendants have a pattern and practice of failing to comply with the TCPA.

148. The foregoing acts and omissions were violations of the TCPA and Michigan Telemarketing Statutes.

149. The foregoing acts and omissions were done with malicious, intentional, willful, reckless, wanton, and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

150. Defendants' calls, voicemails, and text messages were knowing and willful violations of the TCPA.

151. Defendants are engaging in violations of the TCPA and Michigan Telemarketing Statutes in order to garner business.

152. Defendants' officers, employees, and other personnel can be held personally liable in TCPA actions for unlawful conduct.

153. Defendants' calls to Plaintiff were not made for "emergency purposes."

154. Defendants' calls to Plaintiff were made without any prior express written consent.

155. Defendants contacted Plaintiff, despite that Plaintiff was on the Do Not Call Registry.

156. The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent *bona fide* error, lawful right, legal defense, legal justification or legal excuse.

157. As a result of the above violations of the TCPA and Michigan Telemarketing Statutes, Plaintiff has suffered losses and damages as set forth above entitling Plaintiff to an award of statutory, actual, and trebles damages.

158. In discovery, Plaintiff will identify the precise number of telephone calls made and voicemails left by Defendants and/or its agents or affiliates and will then request leave to amend the complaint accordingly.

## <u>COUNT 1:</u>

<u>Violating TCPA automated telemarketing call provisions, 47 U.S.C. § 227(b)(1).</u>

159. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

160. Defendants called and texted Plaintiff's cellular telephone line using an automatic telephone dialing system and/or a pre-recorded voice without Plaintiff's prior express written consent through at least 65 calls, at least 17 prerecorded voicemails, and at least 12 text messages, for a combined total of at least 94 violations of 47 U.S.C. § 227(b)(1).

161. Pursuant to 47 U.S.C. § 227(b)(3)(B), Plaintiff was statutorily damaged by Defendants at least 94 times in the amount of $500 per time.

162. Defendants' actions were willful and/or knowing violations of the TCPA as evidenced by

(a) Plaintiff's phone number having been registered on the federal Do-Not-Call list since 2009; (b) Defendants' notice of their potential liabilities under the TCPA following 12 separate lawsuits in multiple federal district courts beginning in January 2024; (c) Defendants' continual calls, voicemails, and text messages to Plaintiff beginning in November 2024; and (d) Defendants' continual calls, voicemails, and text messages to Plaintiff after he had twice requested in writing that the calls be discontinued.

163. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $141,000, plus costs and any other remedy deemed appropriate.

## COUNT 2:

### Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5): Initiating a telephone solicitation to a residential telephone subscriber who is on the national Do Not Call Registry, 47 C.F.R. § 64.1200(c)(2)

164. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

165. Defendants initiated a telephone solicitation to Plaintiff's cellular telephone line through at least 65 calls, at least 17 prerecorded voicemails, and at least 12 text messages, despite that Plaintiff was on the National Do Not Call Registry, for a total of at least 94 violations of 47 C.F.R. § 64.1200(c)(2).

166. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 94 times in the amount of $500 per time.

167. Defendants' actions were willful and/or knowing violations of the TCPA as evidenced by

(a) Plaintiff's phone number having been registered on the federal Do-Not-Call list since 2009; (b) Defendants' notice of their potential liabilities under the TCPA following 12 separate lawsuits in multiple federal district courts beginning in January 2024; (c) Defendants' continual calls, voicemails, and text messages to Plaintiff beginning in November 2024; and (d) Defendants' continual calls, voicemails, and text messages to Plaintiff after he had twice requested in writing that the calls be discontinued.

168. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $141,000, plus costs and any other remedy deemed appropriate.

<u>**COUNT 3:**</u>

<u>Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5):</u>
<u>Failure to provide name of telemarketing entity in artificial or prerecorded voice telephone</u>
<u>voicemail, 47 C.F.R. § 64.1200(b)</u>

169. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

170. Defendants left Plaintiff at least 17 voicemails, none of which conformed to the requirements of 47 C.F.R. § 64.1200(b), which requires that all artificial or prerecorded voice messages shall "at the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call." 47 C.F.R. § 64.1200(b).

171. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 17 times in the amount of $500 per time.

172. Defendants' actions were willful and/or knowing violations of the TCPA as evidenced by

(a) Plaintiff's phone number having been registered on the federal Do-Not-Call list since 2009; (b) Defendants' notice of their potential liabilities under the TCPA following 12 separate lawsuits in multiple federal district courts beginning in January 2024; (c) Defendants' continual calls, voicemails, and text messages to Plaintiff beginning in November 2024; (d) Defendants' continual calls, voicemails, and text messages to Plaintiff after he had twice requested in writing that the calls be discontinued, the latter of which was acknowledged in writing by Defendants' counsel; and (e) Defendants' control of the script read by the automated and/or prerecorded voice, which willfully excludes the identifying information required by 47 C.F.R. § 64.1200(b).

173. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $25,500, plus costs and any other remedy deemed appropriate.

## COUNT 4:

### Violation of protections of subscriber privacy rights, 47 U.S.C. § 227(c)(5):
### Failure to provide name of telemarketing entity, 47 C.F.R. § 64.1200(d)(4)

174. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

175. As described in Allegations 104 and 109, when Plaintiff answered Defendants' telemarketing calls – one on January 28, 2025 at 3:13 P.M., and another on January 31, 2025 at 12:30 P.M. – Plaintiff was greeted by an automated or prerecorded voice that failed to state the name of the person or entity on whose behalf the call was being made, which together constitute 2 violations of 47 U.S.C. § 64.1200(d)(4).

176. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 2 times in the amount of $500 per time.

177. Defendants' actions were willful and/or knowing violations of the TCPA as evidenced by

(a) Plaintiff's phone number having been registered on the federal Do-Not-Call list since 2009; (b) Defendants' notice of their potential liabilities under the TCPA following 12 separate lawsuits in multiple federal district courts beginning in January 2024; (c) Defendants' continual calls, voicemails, and text messages to Plaintiff beginning in November 2024; (d) Defendants' continual calls, voicemails, and text messages to Plaintiff after he had twice requested in writing that the calls be discontinued; and (e) Defendants' control of the script read by the automated and/or prerecorded voice, which willfully excludes the identifying information required by 47 C.F.R. § 64.1200(d)(4).

178. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $3,000, plus costs and any other remedy deemed appropriate.

### <u>COUNT 5:</u>

<u>Violation of protections of subscriber privacy rights, 47 U.S.C. § 227(c)(5):</u>
<u>Failure to honor a residential telephone subscriber's request not to receive calls, 47 C.F.R. § 64.1200(d)(3)</u>

179. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

180. As described in Allegation 103, on January 18, 2025, Plaintiff had requested via email that Defendants stop calling him.

181. As described in Allegations 104 through 106, on January 28, 2025, Plaintiff answered a telemarketing call from Defendants in which Defendants' employee, Danny Martinez, informed Plaintiff that Plaintiff was on Defendants' Do-Not-Call list.

182. Including that call, Defendants have since called Plaintiff 10 times, have since left Plaintiff 4 voicemails, and have since texted Plaintiff 12 times, for a combined total of 26 violations of 47 C.F.R. § 64.1200(d)(3).

183. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 26 times in the amount of $500 per time.

184. Defendants' actions were willful and/or knowing violations because Defendants' employee confirmed to Plaintiff that Plaintiff was on Defendants' Do-Not-Call list as of at least January 28, 2025, and yet, Defendants continued calling, leaving voicemails, and texting Plaintiff.

185. On February 6, 2025 Plaintiff sent a second Do-Not-Call demand to Defendants, to which Defendant's counsel eventually responded. Nevertheless, Defendants *to this day* have not stopped calling or texting Plaintiff, with the last known contact occurring on March 21, 2025 as described in Allegation 136, which generates a strong inference that Defendants' illegal conduct is both knowing and willful.

186. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $39,000, plus costs and any other remedy deemed appropriate.

**COUNT 6:**

35.

Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5):
Initiating artificial or pre-recorded voice telephone calls without providing personnel information
and training in the existence and use of the do-not-call list, 47 C.F.R. § 64.1200(d)(2)

187.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

188.  As described in Allegations 104 and 109, Defendants called Plaintiff using an artificial or prerecorded voice 2 times, and as described frequently in the foregoing allegations, Defendants left Plaintiff 17 prerecorded voicemails.

189.  As described in Allegation 121, following Plaintiff's inquiry to Defendants seeking a copy of their Do-Not-Call policies, and Defendant's delivery of a purported do-not-call policy, the policy rendered was insufficient for providing Defendants' personnel with effective information and training on the existence and use of do-not-call lists pursuant to Defendants' requirements under 47 C.F.R. § 64.1200(d)(2), as evidenced by Defendants' 19 total artificial and/or prerecorded voice contacts with Plaintiff after Defendants told Plaintiff they had placed him on their Do-Not-Call list.

190.  Accordingly, Defendants placed 19 artificial and/or prerecorded voice telephone calls to Plaintiff without having provided Defendants' personnel with information and training in the existence and use of the do-not-call list.

191.  Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 19 times in the amount of $500 per time.

192.  Defendants' violation was knowing and willful because training personnel on do-not-call policies is a required element of the TCPA, and having been sued under the TCPA 12 times excluding this suit, Defendants had already been on notice that their TCPA compliance was lacking. Despite this knowledge, Defendants continued telemarketing activities without taking necessary steps to ensure compliance with the TCPA.

193. Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $28,500, plus costs and any other remedy deemed appropriate.

## <u>COUNT 7:</u>

<u>Violation of TCPA protection of subscriber privacy rights, 47 U.S.C. § 227(c)(5):
Initiating an artificial or prerecorded voice telephone call without a written policy, available on demand, for maintaining a do-not-call list, 47 C.F.R. § 64.1200(d)(1)</u>

194. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

195. As described in Allegation 121, Plaintiff sent Defendants an email on February 6, 2025 requesting a copy of their do-not-call policies, to which Defendants did not respond until 6 days later, February 12, 2025.

196. Defendants' 6-day delay in responding to Plaintiff's request for Defendants' do-not-call policies is violation of 47 C.F.R. § 64.1200(d)(1), which requires that such policies be made available on-demand.

197. Pursuant to 47 U.S.C. § 227(c)(5)(B), Plaintiff was statutorily damaged by Defendants at least 1 time in the amount of $500 per time.

198. Defendants' violation was knowing and willful because maintaining do-not-call policies and making them available on demand is a required element of the TCPA, and having been sued under the TCPA 12 times excluding this suit, Defendants had already been on notice that their TCPA compliance was lacking. Despite this knowledge, Defendants continued telemarketing activities without taking necessary steps to ensure compliance with the TCPA.

199.  Because Defendants willfully and/or knowingly violated this subsection of the TCPA, the Court should treble the damage amount to $1,500 per each violation as permitted by 47 U.S.C. § 227(c)(5)(C).

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $1,500, plus costs and any other remedy deemed appropriate.

### COUNT 8:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Making a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal Do-Not-Call list, MCL § 445.111a(5)

200.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

201.  Beginning in November 2024, Defendants placed 65 phone calls and 17 voicemails, for a total of 82 telephone solicitations to Plaintiff despite that Plaintiff's phone number has been registered on the federal Do-Not-Call list since 2009.

202.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 82 time in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $20,500, plus costs and any other remedy deemed appropriate.

### COUNT 9:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Making a telephone solicitation that consists in whole or in part of a recorded message, MCL § 445.111a(1)

203.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

204.  As described in Allegations 104 and 109, Defendants called Plaintiff using an artificial or prerecorded voice 2 times, and as described frequently in the foregoing allegations,

Defendants left Plaintiff 17 prerecorded voicemails, for a total of 19 telephone solicitations consisting in whole or in part of a recorded message.

205.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 19 time in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $4,750, plus costs and any other remedy deemed appropriate.

## COUNT 10:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Failure to state the full name of the organization or other person on whose behalf a call was
initiated at the beginning of a telephone solicitation to a residential telephone subscriber,
MCL § 445.111b

206.  Plaintiff incorporates all preceding paragraphs as if fully restated herein.

207.  As described in Allegations 104 and 109, Defendants called Plaintiff using an artificial or prerecorded voice 2 times, and as described frequently in the foregoing allegations, Defendants left Plaintiff 17 prerecorded voicemails, for a total of 19 telephone solicitations consisting in whole or in part of a recorded message.

208.  Defendants failed to identify themselves at any portion of each of the 19 aforementioned telephone solicitations, and specifically at the beginning of each of the 19 telephone solicitations, in violation of MCL § 445.111b.

209.  Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 19 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $4,750, plus costs and any other remedy deemed appropriate.

## COUNT 11:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Making a telephone solicitation to a consumer in the State of Michigan who has requested that he
not receive calls from the organization on whose behalf the telephone solicitation is made, MCL
§ 445.111c(1)(g)

210. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

211. As described in Allegations 103 and 121, Plaintiff requested via email to Defendants on January 18, 2025 that Defendants stop calling him.

212. As described in Allegations 104 through 109, Defendants' agent Danny Martinez confirmed to Plaintiff on January 28, 2025 during a telephone solicitation that Plaintiff was on Defendants' do-not-call list.

213. Including the aforementioned telephone solicitation with Defendants' agent Danny Martinez, subsequent to Plaintiff's emailed do-not-call request, Defendants contacted Plaintiff 10 times and left Plaintiff 4 voicemails, for a total of 14 violations of MCL § 445.111c(1)(g).

214. Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 14 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $3,500, plus costs and any other remedy deemed appropriate.

## COUNT 12:

Violation of Michigan Home Solicitation Sales Act (MHSSA), MCL § 445.111:
Misrepresenting in a message left for a consumer on his voice mail that the consumer has a
current business matter or transaction or a current business or customer relationship with the
telephone solicitor or another person and request that the consumer call the telephone solicitor or
another person to discuss that matter, transaction, or relationship, MCL § 445.111c(1)(h)

215. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

216. In total, Defendants left Plaintiff 17 voicemails.

217. Each of the 17 voicemails inferred that Plaintiff had either (a) a current business matter or transaction, or (b) current business or customer relationship with Defendants despite that Plaintiff had no such relationship with Defendants.

218. Each of the 17 voicemails also requested that Plaintiff call Defendants to discuss the purported matter, transaction, or relationship, despite that no such things existed.

219. Pursuant to MCL § 445.111c(3), Plaintiff was statutorily damaged by Defendants at least 17 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $4,250, plus costs and any other remedy deemed appropriate.

## COUNT 13:

Violation of Michigan Consumer Protection Act, MCL § 445.900:
Engaging in unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce by violating the MHSSA, MCL § 445.111, *et seq*, in conjunction with a telephone solicitation, MCL § 445.903(1)(gg)

220. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

221. Defendants are liable for 82 violations of the MHSSA in Count 8, 19 violations of the MHSSA in Count 9, 19 violations of the MHSSA in Count 10, 14 violations of the MHSSA in Count 11, and 17 violations of the MHSSA in Count 12, for a total of 151 violations of the MHSSA.

222. Each and every MHSSA violation constitutes an unfair, unconscionable, or deceptive method, act, or practice in the conduct of trade or commerce under the Michigan Consumer Protection Act, MCL § 445.900. *See* MCL § 445.903(1)(gg).

223. Pursuant to MCL § 445.911(2), Plaintiff was statutorily damaged by Defendants at least 151 times in the amount of $250 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $37,750, plus costs and any other remedy deemed appropriate.

## COUNT 14:

Violation of Michigan Telephone Companies as Common Carriers Act (MTCCCA),
MCL § 484.125:
Using a telephone line to contact a telephone subscriber at the subscriber's residence to deliver a recorded message for the purpose of presenting commercial advertising to the subscriber,
MCL § 484.125(2)(a)

224. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

225. As described in Allegations 104 and 109, Defendants called Plaintiff using an artificial or prerecorded voice 2 times, and as described frequently in the foregoing allegations, Defendants left Plaintiff 17 prerecorded voicemails, and in all cases for the purpose of presenting commercial advertising, for a total of 19 violations of MCL § 484.125(2)(a).

226. Pursuant to MCL § 445.911(2), Plaintiff was statutorily damaged by Defendants at least 19 times in the amount of $1,000 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $19,000, plus costs and any other remedy deemed appropriate.

## COUNT 15:

Violation of Michigan Telephone Companies as Common Carriers Act (MTCCCA),
MCL § 484.125:
Delivering, or attempting to deliver, intrastate commercial advertising by activating a feature to block the display of caller identification information that would otherwise be available to the subscriber, MCL § 484.125(2)(b)

227. Plaintiff incorporates all preceding paragraphs as if fully restated herein.

228. Despite that all Defendants are California corporations that are based in and/or have their residences in California, Defendants delivered or attempted to deliver intrastate commercial advertising to Plaintiff by "spoofing" their caller ID information so as to make it appear as

though their calls were originating in Michigan, specifically by using phone numbers with Michigan area codes 810 (Southern Flint/Tri Cities/Thumb Region) 22 times, and 313 (Wayne County) 11 times, for a total of 33 violations of MCL § 484.125(2)(b).

229.  Pursuant to MCL § 484.125(5), Plaintiff was statutorily damaged by Defendants at least 33 times in the amount of $1,000 per time.

WHEREFORE, Plaintiff requests judgement be entered in his favor against Defendants, jointly and/or severally, in the amount of $33,000, plus costs and any other remedy deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgement be entered in his favor and against Defendants, jointly and severally, as follows:

**A.** Damages:

    **1.** Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 94 |
| II | 94 |
| III | 17 |
| IV | 2 |
| V | 26 |
| VI | 12 |
| VII | 1 |

A total of 246 violations at $500 per violation, for total damages of $123,000 which shall be trebled pursuant to 47 U.S.C. § 227(b)(3)(C) and § 227(c)(5)(C) because the violations were willful and/or knowing, for total damages of **$369,000.**

    **2.** Damages for violations of the Michigan Home Solicitation Sales Act alleged:

| Count | Violations |
|-------|------------|
| VIII | 82 |
| IX | 19 |
| X | 19 |
| XI | 14 |

   XII   17

A total of 151 violations at $250 per violation, for total damages of **$37,750.**

**3.** Damages for violations of the Michigan Consumer Protection Act at Count 13: A total of 151 violations at $250 per violation, for total damages of **$37,750.**

**4.** Damages for violations of the Michigan Telephone Companies As Common Carriers Act alleged:

   <u>Count</u>  <u>Violations</u>
   XIV   19
   XV   33

A total of 52 violations at $1,000 per violation, for total damages of **$52,000.**

The cumulative total amount of damages claimed is **$496,500** which in the event of default judgement, is the sum certain damages amount that will be sought.

**B.** An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

**C.** Injunctive relief prohibiting Defendants from initiating any telephone calls, voicemails, and text messages to Plaintiff's cellular telephone line in the future;

**D.** Interest accruing from the date of filing until paid at the statutory rate;

**E.** Leave to amend this Complaint to conform to the evidence presented at trial; and

**F.** Any other relief this Court deems just and proper.

Respectfully submitted,

Dated: March 25, 2025        /s/ Harold E. Rutila, IV

               Harold E. Rutila IV
               *Pro se*
               11800 Merriman Rd #51552
               Livonia, MI 48151
               h.rutila@gmail.com
               (810) 845-3497